CARROLL, Judge.
These appeals were filed by the defendant below from two interlocutory orders entered in an action brought by the appel-lee against the appellant for alimony unconnected with divorce, under § 61.09 Fla. Stat., F.S.A.
The parties were married on January 20, 1970, after having entered into an antenup-tial agreement. On or about May IS, 1971 they separated, and the wife filed the present action. She applied for temporary alimony, suit money and attorney fees. In opposition thereto the defendant husband presented the antenuptial agreement. Therein the wife had agreed to accept the provisions made for her in the contract[1] in lieu of “any and all claims” which could be made by her against the husband “for alimony, suit money or other maintenance.” [2]
*77 On July 1, 1971, the trial court entered an order in which it was recited that the plaintiff wife “does not contest the validity of the antenuptial agreement as a whole, but does contest the validity of Paragraph 4 thereof as pertains to waiver of alimony and maintenance”, and wherein the court held that the noted provision of the agreement would not preclude the wife from receiving temporary alimony and suit money, and made provision for a further hearing upon which to receive evidence and determine the amounts of such allowances. From that order the defendant husband filed interlocutory appeal No. 71-839.
Thereafter on July 28, 1971, the trial court entered an order awarding the plaintiff wife temporary alimony, and certain suit money including attorney fees. The defendant husband filed interlocutory appeal No. 71-838 from that order.
The provision of the antenuptial agreement, by which the wife agreed to accept the benefits received by her thereunder in lieu of any and all claims which could be made by her against the husband for alimony or suit money, was unambiguous and definite. In the July 1 order the trial court withheld ruling at that time on whether such agreement would be effective to preclude the wife from receiving alimony (which was the object of her filed action), but the court held said agreement was not effective to preclude her from claiming temporary alimony and suit money. We hold the latter ruling of the trial court was incorrect, and reverse.
On these appeals this court is not presented with the need to determine whether, under a contract such as this, a wife would be entitled to receive temporary alimony and suit money if she were proceeding for divorce. Compare Lindsay v. Lindsay, Fla. App.1964, 163 So.2d 336. This case does not present that situation. Here the sole object of the wife’s action was to obtain alimony, contrary to the express provision of the agreement by which she was not entitled to claim or receive it. There would appear to be no underlying reason of public policy, or otherwise, to grant the wife temporary alimony and suit money to aid her in prosecuting an action for alimony which, by her agreement, she was not entitled to claim.
The determinative question in the case then becomes whether an agreement by a wife in an antenuptial agreement, which is otherwise valid and in which she receives substantial consideration, wherein she agreed to waive any and all claims to alimony and suit money, is valid, or must be declared to be against public policy, and void.
In Posner v. Posner, Fla. 1970, 233 So.2d 381, the Supreme Court rejected a contention that an antenuptial agreement by which a prospective wife waives or limits her rights to alimony in the event of divorce or separation is against public policy and void. In that case, in which an ante-nuptial agreement had made provision for only a limited amount of alimony, the court held that the agreement was valid and binding between the parties, “but subject to be increased or decreased under changed con- . ditions as provided for in § 61.14, Florida Statutes, F.S.A.” The decision in that case denotes the validity of the agreement of the wife with relation to alimony in the present case. Here the wife has accepted the benefits received under the agreement, and her application for alimony was not based on any necessity claimed to have arisen from changes of financial circumstances of the parties.
Accordingly, the orders by which temporary alimony and suit money were allowed in this case are reversed.

. Under that agreement, upon marriage of the parties, the wife received from the husband certain real and personal property. This consisted of “Lot 21 of Block 1 in BAY POINT” subdivision, which was subject to a $20,000 mortgage that the husband agreed to pay; 652 shares of stock of South Miami Corporation; 40 shares of stock of The Florida National Bank and Trust Company at Miami; 304 shares of stock of People’s Liberty National Bank of North Miami; cash in the amount of $15,336; and she was made “irrevocable” beneficiary of a $50,-000 policy on the life of the husband.

. “4. The provisions herein provided to be made for Second Party in the event said marriage is consummated shall be and are hereby accepted by Second Party in lieu of any and all dower or rights of dower, and in lieu of any and all rights of inheritance, and in lieu of any and nil other claims and demands which otherwise but for this Agreement could be claimed or asserted by Second Party in or to the estate and property of First Party, either before, at or after the death of First Party, and the provisions herein provided to be made to Second Party are and shall he also accepted hy Second Pm-ty in lien of any and all claims which may or could he made hy her against First Party for alimony, suit money or other maintenance during the lifetime of First Party; and Second Party hereby waives, renounces and relinquishes any and all rights of dower, inheritance and other claims or demands of every kind and character which she might or could but for this agreement claim or assert against First Party or in or to the estate of First Party in the event he shall predecease Second Party.” [Italics supplied.]